UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MAYA ROYTLENDER,

                Plaintiff,                    **MEMORANDUM DECISION
                                                                    AND ORDER**
                                                                     21-cv-00052(MKB)(JMW)

               -against-


D. MALEK REALTY, LLC, MALEK
MANAGEMENT CORPORATION,
STAFFPRO, INC., DAVID MALEK,
AND MICHAEL MALEK

                Defendants.
-----------------------------------------------------------------X

**A P P E A R A N C E S:**

Paul L. Dashefsky
317 Middle Country Road
Smithtown, NY 11787
*Attorney for Plaintiff-Counterclaim Defendant*

Jonathan D. Farrell
Daniel Frank Carrascal
Larry R. Martinez
Mark A. Radi
**Meltzer Lippe Goldstein & Breitstone LLP**
190 Willis Avenue
Mineola, NY 11501
*Attorneys for Defendants-Counterclaim Plaintiffs*


**WICKS,** Magistrate Judge:

       To date, in the span of only nine months, the parties have managed to file no less than

*twelve* discovery motions: DE 38 (motion to compel), 40 (motion to compel), 46 (motion to

strike), 51 (motion regarding 30(b)(6) Notice deficiency), 55 (scheduling dispute), 56

(scheduling dispute), 61 (motion to compel), 64 (motion to compel), 65 (motion to compel), 71

1

(motion to compel), 72 (deposition dispute), 77 (motion to compel), and 83 (motion to compel).[1] Most have been resolved by the Court, several are *sub judice.*

Before the Court at this time are three of the dozen, each of which were filed by Defendants and Counterclaimants Malek Realty, LLC, Malek Management Corporation, StaffPro, Inc., David Malik, and Michael Malek ("Defendants"). The *first* motion is one to compel Plaintiff-Counterclaim Defendant Maya Roytlender ("Plaintiff") to respond to specific questions posed during Plaintiff's deposition concerning whether Plaintiff was instructed by her counsel to preserve documents. (DE 61.) The *second* seeks a directive to compel the production of Plaintiff's tax returns. (DE 64.) And the *third* is a motion to compel non-party witness Nicole Roytlender ("Nicole") to produce documents and appear for her depositions. (DE 71.)

For the reasons that follow, the motion (i) to compel Plaintiff to answer certain questions posed in the deposition is granted in part and denied in part, (ii) to compel the production of Plaintiff's tax records is denied with leave to renew, and (iii) for a so-ordered subpoena as to Nicole Roytlender is granted.

## BACKGROUND

Plaintiff was an employee of Defendants[2] from about October 2012 to on or about October 22, 2020. (DE 1 at 3.) Plaintiff's responsibilities included aiding new hires in completing their paperwork, reporting employee hours to a payroll company, and communicating with clients about their security deposits. (DE 14 at ¶ 8-12.) On or about

---

[1] As one Judge aptly observed, "[s]omething is rotten, but contrary to Marcellus's suggestion to Horatio, it's not in Denmark. Rather, it's in discovery in modern federal civil litigation right here in the United States." *Sec. Nat. Bank of Sioux City, Iowa v. Abbott Lab'ys*, 299 F.R.D. 595, 596 (N.D. Iowa 2014), *rev'd sub nom. Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936 (8th Cir. 2015).

[2] Plaintiff alleges all of the defendants, Malek Realty, Malek Management, StaffPro Corporation and the individual defendants acted as a "Joint Employer" under the Fair Labor Standards Act and New York Labor Law. (DE 1 at ¶ 10.) The nature of the businesses is unclear from the Complaint.

October 22, 2020, Defendants terminated Plaintiff's employment. (DE 1 at 3.) Plaintiff alleges that at the time the Defendants terminated her employment, they owed her $4,875 in duly earned wages, that Defendants failed and refused, and continue to fail and refuse, to pay the Plaintiff the duly earned wages. (*Id.*)

During the last three years of her employment with the Defendants, Plaintiff alleges she worked seven days a week and was paid $975 weekly ($27.86 an hour). (*Id.* at 4.) However, Plaintiff alleges that she was not compensated for additional work, including overtime hours, and hours worked on weekends and during weekdays. (*Id.* at 4-6.)

Plaintiff seeks "unpaid wages, together with liquidated damages, attorney's fees, and costs" in accordance with Fair Labor Standards Act ("FLSA"). (*Id.*) Moreover, Plaintiff seeks "unpaid wages, together with liquidated damages of double the unpaid wages, attorney's fees, and costs" in accordance with Article 6 of the New York Labor Law ("NYLL"). (*Id.* at 7.) Lastly, Plaintiff seeks civil damages in the sum of $2,500.00, plus attorney's fees and costs" under New York Labor Law Section 195 and 198(1-d). (*Id.*)

Defendants have answered and asserted counterclaims for fraud, breach of fiduciary duty, and faithless servant. (DE 14.) Defendants allege that Plaintiff abused her position of trust by engaging in several schemes to defraud Defendants. (*Id.* at 11-12.)   They allege that Plaintiff engaged in payroll fraud, stole tenants' security deposits, and paid for personal expenses using funds from Defendants' bank accounts. (DE 14-1 at 11, 14, 16.) Plaintiff is claimed to have routinely added individuals to Defendants' payroll who did not work for Defendants. (*Id.* at 12.) Between April 2018 and February 2020, Plaintiff used payroll access to distribute checks totaling $282,940.08 to Aleksandr Leontyev, although Defendants claim he was never an employee. (*Id.*

3

at 13.) Supposedly, Plaintiff perpetuated this same scheme on multiple occasions by fabricating identities for seven fictitious employees. (*Id.*)

Defendants allege that Plaintiff would also report fraudulent hours for existing or former employees. (*Id.*) Plaintiff thereby stole in excess of $1,000,000 between January 2018 and October 2020, by perpetuating this scheme for five former and current employees. (*Id.* at 14.)

Defendants assert that Plaintiff implemented a scheme to embezzle residential apartment tenant security deposits. (*Id.*) Plaintiff routinely advised departing tenants that their security deposits were forfeited yet simultaneously informed Defendants that said deposits were returned to the tenants and would issue "reimbursement security checks" to co-conspirators who were employed by Defendants or who were fictitious employees. (*Id.*)

In or around early October 2020, Defendant David Malek confronted Plaintiff regarding the fraudulent security deposit check scheme. (*Id.* at 15.) As a result, Plaintiff returned approximately $32,000 to Defendants. (*Id.* at 16.) She claimed the money came from the co-conspirators, but in fact had siphoned the refund from the reserve accounts of several buildings *managed by Defendants*. (*Id.*)

Defendants then allege that Plaintiff also used Defendants' bank accounts to pay for her personal expenses, including rent, car payments, and utilities. (*Id.*) Plaintiff then supposedly altered bank statements to make it appear that payments were made for legitimate ends. (*Id.*)

## DISCUSSION

**I.     Defendant's Motion to Compel Plaintiff's Deposition Responses (DE 61)**

According to Defendants, on April 4, 2022, during Plaintiff's deposition, defense counsel inquired into Plaintiff's document preservation efforts. (DE 61 at 1.) Defendants argue that

Plaintiff's counsel immediately—and improperly—objected to the line of questioning and instructed the Plaintiff not to answer on the grounds of attorney-client privilege. (*Id.*)

Defendants have provided the Court with select pages of Plaintiff's deposition transcript. (DE 61, Ex. 1.) The relevant excerpts are as follows:

> Q: We've addressed some of this, but I want to go into it now. At any point during this litigation, were you instructed to preserve documents?
>
> A: No.
>
> Q: You weren't?
>
> A: To preserve documents?
>
> Q: To preserve documents related to this matter.
>
> A: To keep them like on me, or just to keep a file of them?
>
> Q: To keep them, to not throw them away, to preserve them.
>
> A: Yeah. I have them electronically, so they're just there.
>
> Q: What documents --
>
> A: I mean I wasn't told to put them in a safe, but I have them electronically, all the documents that were submitted.
>
> Q: I'm not asking you what happened. Were you ever instructed to preserve documents in this matter?
>
> A: By whom?
>
> Q: By counsel, by anybody?
>
> MR. DASHEFSKY: Objection. Anything that's between attorney and client is privileged, so I'm gonna direct her not to answer.
>
> MR. MARTINEZ: We're not gonna ask her privilege[sic] questions. What we're gonna ask is a very specific non-privileged question.

(*Id.* at 165:8-25; 166:2-11.)

\* \* \*

> Q: Were you directed by your attorney to preserve the documents that you produced in this case?
>
> MR. DASHEFSKY: I'm gonna object and direct her not to answer.

5

| | | |
|---|---|---|
| MR. MARTINEZ: | | It's an E preservation question which is subject to disclosure. Were you directed to preserve – |
| MR. DASHEFSKY: | | I'm gonna direct her not to answer any discussion between – |
| MR. MARTINEZ: | | We're gonna mark this for a ruling and keep the record open for all objections and rulings. |
| Q: | Have you preserved documents? | |
| A: | I would have to double check what I have and what I don't. | |

(*Id.* at 166:16-25; 167:2-3.)

Rule 37(a)(3)(B), permits a party seeking discovery to "move for an order compelling an answer, designation, production, or inspection . . . if . . . a deponent fails to answer a question asked under Rule 30 or 31." Fed. R. Civ. P. 37(a)(3)(B). "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). "The attorney-client privilege protects from disclosure confidential communications made for the purpose of obtaining legal advice." *United States v. Town of Oyster Bay*, No. 14-CV-2317 (GRB) (SIL), 2022 WL 34586, at *3 (E.D.N.Y. Jan. 3, 2022) (internal quotations omitted). "The privilege attaches, not to the information itself, but to the communication of the information." *Bristol-Myers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95 CIV. 8833 (RPP), 1998 WL 2829, at *4 (S.D.N.Y. Jan. 6, 1998).

Defendants contend the line of questioning above did not inquire into the substance of a confidential communication between counsel and client, but rather sought information necessary to determine whether any imminent spoilation issues exist. (DE 61 at 2.) According to Defendants, Plaintiff's prior testimony that she possessed documents, binders, spreadsheets, and notes which were not produced along with her discovery responses prompted the above line of

6

questioning.[3] (*Id.*) Defendants argue that they merely sought to "clarify the scope of documents that have not been produced and the preservation efforts relative to the digital information identified for the first time at the deposition." (*Id.*)

In opposition, Plaintiff contends that she answered all of defense counsel's questions concerning the documents in her possession and her preservation of those documents. (DE 62 at 2.) The only questions Plaintiff was instructed not to answer concerned confidential communications with counsel. (*Id.*)

Instructions to preserve documents by way of formal litigation hold notices exchanged between attorneys and their clients are privileged communications and generally immune from discovery. *See Chow v. SentosaCare, LLC*, No. 19-CV-3541-FB-SJB, 2020 WL 13076004, at *2 (E.D.N.Y. June 3, 2020), *reconsideration denied*, No. 19-CV-3541-FB-SJB, 2020 WL 5623976 (E.D.N.Y. July 21, 2020) ("As for the litigation hold notices, this request [to compel] too is denied. Plaintiff concedes that these letters are generally not discoverable. . ."); *Pearlstein v. BlackBerry Ltd.*, No. 13CV07060(CMK)(HP), 2019 WL 1259382, at *18 (S.D.N.Y. Mar. 19, 2019) (finding a litigation hold memo to be privileged); *United Illuminating Co. v. Whiting-Turner Contracting Co.*, No. 3: 18 CV 327 (RNC), 2020 WL 8611045, at *3 (D. Conn. Oct. 30, 2020) ("Courts in other Circuits have noted that both [attorney-client and work product privilege] protections may shield such [litigation hold] notices from disclosure") (collecting cases); *Mcdevitt v. Verizon Servs. Corp.*, No. CV 14-4125, 2016 WL 1072903, at *1 (E.D. Pa. Feb. 22, 2016), *report and recommendation adopted*, No. CV 14-4125, 2016 WL 1056702 (E.D.

---

[3] Specifically, Defendants cite to portions of Plaintiff's deposition transcript wherein Plaintiff testified that she did not remember if she produced certain documents to her attorney, but that she maintained those documents at home. (*Id.* at 78:19-79:14; 81:2-82:8; 167:4-168:7.) Defense counsel appropriately called for the production of those documents and stated a formal demand would be made under separate cover. (*Id.* at 79: 9-14; 82:4-8; 168:3-7.)

7

Pa. Mar. 17, 2016) ("Generally, 'litigation hold' letters exchanged between attorneys and their clients are privileged communications").[4]

That rule, however, is not an absolute barrier to the information. Rather, litigation hold letters may indeed be discoverable where there has been a preliminary showing of spoliation. *Major Tours, Inc. v. Colorel*, No. CIV 05-3091(JBS/JS), 2009 WL 2413631, at *3 (D.N.J. Aug. 4, 2009) ("most applicable authority from around the country provides that litigation hold letters should be produced if there has been a preliminary showing of spoliation"); *Mcdevitt*, 2016 WL 1072903, at *2 ("Therefore, if Defendant produces evidence to substantiate its claim of spoliation, it would be entitled to receive copies of any litigation hold letters"). A "preliminary showing of spoliation" is a necessarily a fact-based inquiry. *Little Hocking Water Ass'n, Inc. v. E.I. Dupont de Nemours & Co.*, No. 2:09-CV-1081, 2013 WL 5311292, at *4 (S.D. Ohio Sept. 20, 2013); *Tracy*, 2012 WL 1067889 at *9 ("As in any case raising issues of spoliation, the court's determination of the scope of the duty to preserve is a highly fact-bound inquiry that involves considerations of proportionality and reasonableness.")

The Court finds no authority, and Plaintiff does not cite to any, which supports a finding that questions concerning *whether* a litigation notice was ever sent violates any attorney-client privilege. In fact, relevant cases suggest otherwise. *See e.g. United Illuminating Co.*, 2020 WL 8611045, at *3 (denying motion to compel the litigation hold notices but granting request for list of the recipients of the litigation hold notices, instructing defendant to inquire during depositions, into the actions taken in response to the notices); *Mcdevitt*, 2016 WL 1072903, at *2 (denying

---

[4] Litigation hold notices may not be considered privileged in cases where the notice has been sent to large groups of employees and merely generally described document retention practices or instructions for preservation. *See, e.g., Bagley v. Yale Univ.*, 318 F.R.D. 234, 239 (D. Conn. 2016).

8

motion to compel litigation hold notice but compelling plaintiff to provide precise date he retained counsel and/or received a litigation hold notice).

Here, the questions objected to by Plaintiff's counsel merely inquire as to *whether* Plaintiff was ever instructed to preserve documents, not the content of any instruction or the litigation hold notice itself. Therefore, the Court concludes that the information sought by those specific questions, *i.e.,* whether the witness was instructed to preserve documents, is not protected by the attorney client privilege. Therefore, Defendants' motion to compel Plaintiff's testimony as to the specific questions objected to by Plaintiff's counsel (*see* DE 61-1) is granted.

To the extent Defendants seek an advisory opinion, further compelling responses to questions about the chain of custody of evidence, the Plaintiff's methods of preserving ESI and her compliance with any litigation hold notice, Defendants' motion is denied. Defendants' request for sanctions as against Plaintiff's counsel pursuant to Rule 30(d)(3) is also denied, as Defendants have failed to show that counsel's conduct impeded, delayed, or frustrated Plaintiff's deposition in any material sense. *See Quinio v. Aala*, No. 15-CV-4912-PKC-SJB, 2017 WL 8646668, at *2 (E.D.N.Y. Dec. 21, 2017) ("To obtain sanctions, the moving party has the burden of showing that the deposition was impeded, delayed or frustrated in any material sense) (quotations omitted); *Fashion Exch. LLC v. Hybrid Promotions, LLC*, 333 F.R.D. 302, 305 (S.D.N.Y. 2019) (finding "[n]ot every improper objection warrants sanctions," but sanctions are appropriate where "the attorney's conduct essentially destroys a deposition"). Those remaining questions can easily and efficiently be asked at a deposition conducted remotely by telephone or video. *See* Fed. R. Civ. P. 30(b)(4); EDNY Local Rule 30.2.

## II. Motion to Compel Plaintiff's Tax Returns (DE 64)

On May 31, 2022, Defendants filed a motion seeking an order compelling Plaintiff to produce her tax returns and other tax documents and for sanctions. (DE 64.) This is not the first time Defendants have moved to compel Plaintiff's tax returns. Defendants first moved to compel the production of Plaintiff's tax information on December 22, 2021. (DE 38.) They asserted that Plaintiff admitted to depositing at least one unauthorized security deposit check and conjectured that tax records may reveal evidence of misappropriated funds. (*Id.*) The Court denied Defendants' first motion to compel production of the tax returns. However, the Court authorized the Defendant to reach this issue during Plaintiff's deposition, and left the ruling open, pending that line of questioning.

Defendants deposed Plaintiff on April 4, 2022. (DE 64 at 1.) Defendants have renewed their motion and seek the following:

1) all W-2 and 1099 forms Plaintiff received from 2012 to present,[5] including the 1099 forms Plaintiff testified S&N and M&F issued to her;

2) copies of all federal and state tax returns Plaintiff filed from 2012 to present;

3) fully executed authorizations to enable Defendants to obtain complete certified copies of Plaintiff's filed tax returns from 2012 to present;

4) copies of all invoices and other documents reflecting work Plaintiff performed for S&N and M&F from 2012 to present; and

5) all documents reflecting all purchases Plaintiff made from M&F for appliances for her personal homes.

(*Id.* at 2.)

---

[5] Defendants contend that counsel for the Defendants and Plaintiff conferred on the scope of the discovery requests and have agreed that the appropriate time frame for these demands include the period of Plaintiff's employment with Defendants from 2012-2020, which her tax returns for 2013-2021 would reflect. (*Id.*)

10

Defendants contend that during discovery they located cashed checks in Plaintiff's bank account from S and N Maintenance ("S&N") and M&F Refrigeration ("M&F") – two of Defendants' vendors (together "Vendors") – as well as checks Defendants issued and made payable to M&F that Plaintiff deposited and cashed in her own bank account. (*Id.* at 1.) During Plaintiff's deposition, Plaintiff testified she worked as a paid consultant for both M&F and S&N during the time Defendants employed her. (*Id.* at 1-2.) According to Defendants, Plaintiff testified that she was issued 1099 forms by S&N and M&F but that she no longer in possession of those documents. She further avers that the checks issued by Defendants to M&F, which Plaintiff cashed in her own bank account, were relinquished to her by M&F as refunds for defective appliances she had purchased for personal use. (*Id.* at 2.) Defendants argue that the tax information is relevant to the claims and defenses of the FLSA action, as well as to their counter allegations of fraud, etc. (*Id.*)

In opposition, Plaintiff asserts four arguments: that (1) Defendants' motion is premature because Plaintiff's deposition has not concluded; (2) Defendants have issued subpoenas to both M&F and S&N and it is likely that Defendants will be able to obtain the information they seek through the non-party witnesses; (3) Defendants already obtained Plaintiff's bank records which should contain the information Defendants seek; and (4) Defendants' request for Plaintiff's tax records exceed the limited need of information pertaining to Plaintiff's relationship with M&F and S&N. (DE 69.)

This Court has held that "[i]n order for a requesting party to prevail on a motion to compel the production of tax returns, whether corporate or personal, the requesting party must satisfy a two-prong test: (1) the tax returns must be relevant to the subject matter of the action, and (2) a compelling need must exist because the information is not readily obtainable from a

11

less intrusive source." *Sadofsky v. Fiesta Prod., LLC*, 252 F.R.D. 143, 149 (E.D.N.Y. 2008); *accord Carmody v. Village of Rockville Centre*, No. 05-CV-4907, 2007 WL 2042807 at *2 (E.D.N.Y. July 13, 2007); *New Falls Corp. v. Soni*, No. CV166805ADSAKT, 2020 WL 2836787, at *7 (E.D.N.Y. May 29, 2020). "This two-prong test is in harmony with the current public policy against the compelled production of tax returns." *Sadofsky*, 252 F.R.D. at 149.

The first issue is whether Plaintiff's tax returns are relevant to the claims and defenses of the action. Defendants contend Plaintiff's tax returns are relevant to Plaintiff's FLSA claim and her allegations of unpaid overtime. (DE 64 at 2.) Defendants posit that evidence of Plaintiff's work with S&N and M&F would make claims that she consistently worked numerous overtime hours (apparently seven days a week) for Defendants less probable. (*Id.* at 3.) Defendants also contend Plaintiff's tax information is relevant to the fraud counterclaims. If the checks cashed by Plaintiff from M&F and S&N were legitimate income, Plaintiff's tax returns would reflect that. (*Id.* at 3.)

Tax returns may be relevant where they are expected to contain information concerning the sources and amounts of a witnesses' income or other related financial information. *Sadofsky*, 252 F.R.D. at 149. However, "the discovery of a plaintiff's tax returns in an FLSA case is generally not warranted as the information sought is at best only minimally relevant and can be more readily obtained from a less intrusive source, namely the defendant's own records." *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120 JG RER, 2012 WL 6138481, at *3 (E.D.N.Y. Dec. 11, 2012). "Thus, a more stringent standard for discovery of tax returns applies than the general standard of relevance for discovery in Federal Rule of Civil Procedure 26(b)(1)." *Sadofsky*, 252 F.R.D. at 149 (internal quotation marks and citations omitted).

Here, as it pertains to Plaintiff's FLSA claims, Defendants argue Plaintiff's tax returns are relevant because if Plaintiff performed substantial work for S&N and M&F while employed by Defendants such evidence would make Plaintiff's claim that she worked numerous overtime hours for Defendants less probable. (DE 64 at 2-3.) The Court does not agree. The information contained in Plaintiff's tax returns will not show the amount of hours she allegedly worked for either company. As Plaintiff testified in her deposition, she was paid on a fee basis. (DE 64-3 at 149:11-14; 156:13-22; 157:10-16.) Courts have identified this issue in parallel circumstances: "the plaintiffs' tax returns would only include total income and not details that would be relevant in an FLSA and NYLL suit, such as weekly wages and specific hours worked." *Rosas v. Alice's Tea Cup*, LLC, 127 F.Supp.3d 4, 11 (S.D.N.Y. 2015) (citing *Rengifo v. Erevos Enterprises, Inc.*, No. 06 CV 4266, 2007 WL 894376, at *2 (S.D.N.Y. Mar. 20, 2007).

Defendants also claim that the tax returns would be relevant to their counterclaims of fraud and theft. Defendants' reason that if the checks cashed by Plaintiff from M&F and S&N represent legitimate income, such income should be reflected on Plaintiff's tax returns and other tax documents. (DE 64.) Defendants contend that Plaintiff's failure to report such income would be evidence that Plaintiff misappropriated/stole funds from Defendants' bank accounts more probable. (*Id.*) Even though this argument moves the needle closer to the mark, it still fails.

Even assuming Plaintiff's tax returns are relevant for this reason, Defendants have not demonstrated a compelling need for these tax returns. The information contained therein may well be available through other—less intrusive—channels. A "compelling need does not exist where the requesting party is in possession of financial documents from which the information sought may be obtained readily, even where the requesting party may need to compile numerous records in its possession to ascertain the information sought from the tax returns." *Grant v. Her*

13

*Imports NY, LLC*, No. 15CV5100DLILB, 2017 WL 9938287, at *4 (E.D.N.Y. Mar. 20, 2017). "Depositions have been considered a less intrusive source for obtaining such information." *Id.* "The fact that certain information may be accessible more easily from an adversary's tax returns than from depositions or other financial documents does not, without more, constitute a compelling need." *Id.*

Here, Defendants are already in possession of Plaintiff's bank records. (DE 64 at 1-2; DE 69 at 2.) Further, based on the record, Plaintiff's deposition has yet to conclude. (*See* DE 72) (extending Plaintiff's deposition for "an additional 90 minutes"). Defendants may choose to use this additional time to ask Plaintiff more pointed questions, such as whether Plaintiff reported the compensation from the Vendors on her tax returns. (*See generally* DE 64-3) (*Grant*, WL 9938287, at *3) (finding denial motion to compel tax returns was warranted where Defendants failed "to ask more probing questions during Plaintiff's deposition.")

Moreover, based on the record, the depositions of M&F and S&N have not yet occurred. Indeed, when discussing the alleged work Plaintiff did for the Vendors and compensation for her services, Defendants concede that "Defendants have subpoenaed S&N and M&F for such records and deposition testimony." (DE 64 at 3.) Plaintiff asserts that "[t]here is a likelihood that whatever information sought by the Defendants, for which they seek the Plaintiff's tax records, is available through the non-party witnesses." The Court agrees. Therefore, Defendants' motion to compel Plaintiff's tax returns is denied with leave to renew following the depositions of M&F and S&N.

In light of the denial of this motion to compel, Defendants' motion for sanctions is also denied.

14

**III.     Motion to Compel Nicole Roytlender for Appear for Deposition (DE 71)**

On June 9, 2022, Defendants filed a motion seeking an order compelling non-party witness Nicole Roytlender, who is Plaintiff's daughter, to produce documents and appear for her deposition pursuant to Fed. R. Civ. P. 45(d). (DE 71.) According to Defendants, Nicole was served on October 27 for a December deposition. (*Id.*) That deposition never occurred due to unrelated discovery issues. (*Id.*) Defendants again produced a subpoena for Nicole in order to depose her and examine certain documents in her possession on May 11. (*Id.*) However, apparently owing to her evasive behavior, Defendants were unable to serve Nicole until May 18, a full week after the planned deposition. (*Id.*) Defendants argue that Nicole's testimony is relevant in that she cashed around $30,000 in checks issued by the Defendants, despite the Defendants never having authorized any payment (compensatory or otherwise) in her name. (*Id.*)

Plaintiff does not oppose the motion. Defendants assert that Plaintiff's counsel has explained that does not represent Nicole with respect to her deposition. (DE 71 at 2.) Defendants' motion to compel was served upon Nicole (DE 71-6), but Nicole has not filed a response or opposition, nor has she moved for a protective order or to quash the subpoena.

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i), a party who has properly served a subpoena "may move the court for the district where compliance is required for an order compelling production or inspection." "Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)." *Jalayer v. Stigliano*, No. CV102285 (LDH)(AKT), 2016 WL 5477600, at *2 (E.D.N.Y. Sept. 29, 2016) (citations omitted). "Therefore, [t]he party

issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Id.* (quotes omitted.)

Defendants have demonstrated the relevancy of Nicole's testimony and document production.  Nicole has purportedly received as much as $30,000 in checks from Defendant's accounts, despite the Defendant's claims that they never knew she was employed for them at all. The Defendants' claim that Plaintiff committed fraud via the channeling funds to herself through "pawns" or cooperating actors. (DE 71.)  Nicole, supposedly one of those involved parties, is sure to offer relevant testimony.

Although Defendants characterize their motion as a "motion to compel" under Rule 45, Defendants simply seek a so-ordered subpoena.  (*See* DE 71 at 3) ("Defendants respectfully request this Court 'so order' the attached subpoena. . . ").  Based on the foregoing, Defendant's request for a so-ordered subpoena is hereby granted, and Defendants are directed to file a subpoena with renewed dates for the undersigned's so-ordering.

## **CONCLUSION**

For the foregoing reasons, Defendants' motions are decided as follows:

(1) The motion to compel the Plaintiff to answer certain questions as to a litigation hold notice is granted in part and denied in part;

(2) The motion to compel the production of the Plaintiff's tax records is denied with leave to renew following the depositions of M&F and S&N; and

(3) The request for a so-ordered subpoena as to Nicole Roytlender is granted.

Dated: Central Islip, New York
October 6, 2022

**S O   O R D E R E D:**

/S/ *James M. Wicks*
James M. Wicks
United States Magistrate Judge